KERITE COMPANY *v.* ALPHA EMPLOYMENT AGENCY, INC., ET AL.

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued April 4—decision released June 4, 1974

*Geoffrey A. Hecht,* with whom, on the brief, was *Bernard J. Virshup,* for the appellant (named defendant).

*Norman Fineberg,* for the appellee (plaintiff).

SHAPIRO, J. The plaintiff brought an action in the nature of interpleader to the Circuit Court. It named as defendants Alpha Employment Agency, Inc., hereinafter called Alpha, and S-H-S Interna-

tional of New Haven, hereinafter called S-H-S. The action was brought to determine the rights of these defendants to an employment agency fee.

The complaint alleges that the plaintiff manufactures insulated wire and cable; that on or about August 20, 1968, the plaintiff employed Thomas E. Mahoney as assistant to its factory production manager; that each defendant claims to have been "the predominating efficient cause" of Mahoney's employment by the plaintiff; and that each defendant claims to be entitled to an employment agency fee. It alleges that Alpha claims a fee of $1320, and that S-H-S claims a fee of $1440. It also states that the plaintiff holds the sum of $1440 as "the maximum employment agency fee payable by it" on account of Mahoney's employment, but that these moneys are insufficient to pay in full the claims of both defendants.

In its answer, Alpha admits that it claims to have been the predominating efficient cause and claims it is entitled to a fee of $1320. It denies knowledge of the S-H-S claim, and leaves the plaintiff to its proof as to that matter. By way of special defense, Alpha alleges that the relationship between each of the defendants and the plaintiff was contractual in nature; that the plaintiff may have become liable to both defendants for their respective fees; and that "[t]he plaintiff is not a mere stakeholder, but has a potential liability which may exceed the sum of $1440.00."

S-H-S, in its amended answer, admits it claims to have been the predominating efficient cause and claims to be entitled to a fee of $1440. It denies knowledge of the Alpha claim, and leaves the plaintiff to its proof. In its special defense, S-H-S alleges

that the plaintiff was negligent in the manner in which it dealt with both defendants in the employment of Mahoney; that "as a result of the plaintiff's own wrongdoing, the claims of both defendants came about"; that it is not "a mere stakeholder, but has an interest in the disputed subject matter"; that the plaintiff has a potential liability which may exceed $1440; and that the plaintiff may be independently liable to each defendant. The special defenses of both defendants are denied by the plaintiff.

The facts of this case are undisputed. The plaintiff solicited the services of both Alpha and S-H-S in its efforts to employ an engineer as an assistant to its factory manager. Through its employee, David S. Porter, the plaintiff sent requisitions, known as job orders, to various employment agencies, including the defendants. The job order requisitions requested that inquiries concerning engineers be directed to Porter. By custom, the placement of an engineer is a "fee paid" position, and it was understood by all of the persons involved that the plaintiff would pay the fee for such placement.

Mahoney, the engineer eventually engaged on behalf of the plaintiff, solicited the services of both Alpha and S-H-S in order to obtain placement as an engineer. On July 15, 1968, he registered and filled out Alpha's customary application and was interviewed by David Hickey. Later, on that same day, Mahoney also solicited the services of S-H-S for placement as an engineer. He registered and filled out their customary application and was interviewed by Lewis McGuire. After Mahoney had left his office, McGuire called Porter. He identified himself as "Lou McGuire of S-H-S." He described Mahoney, stated his qualifications for the job and indicated

that he thought he was the kind of man the Kerite Company was seeking. Porter told McGuire that he was not interviewing anyone for a job without first seeing a resume and told McGuire to send him Mahoney's resume. The resume which McGuire sent to Porter on July 15, 1968, was received by Porter on July 16, 1968. On July 16, 1968, McGuire again telephoned Porter, identified himself as "McGuire of S-H-S," and asked if Porter had received the resume and whether he was interested in interviewing Mahoney. Porter told McGuire that he received the resume and that he wanted to see Mahoney the next morning. McGuire then called Mahoney, identified himself and told him that he was to go to the plaintiff's plant the next morning, July 17, 1968, for an interview with Porter. McGuire gave Mahoney directions to get to the plaintiff's plant.

At about 9 a.m. on July 16, 1968, Hickey, of Alpha, called Porter and identified himself as "Hal Hickey of the Alpha Employment Agency." Porter recognized that Hickey was calling him about the same Mahoney that McGuire had discussed with him. Porter told Hickey that there was not much that he could do over the telephone, and that he had already talked to someone else about Mahoney, but to send Mahoney in the next morning for an interview. Hickey called Mahoney, advised him of the interview, ascertained he would be able to make it at that time, and gave him detailed directions to the plaintiff's place of business.

On July 25, 1968, Porter hired Mahoney, but prior thereto he had become aware that both defendants were claiming a fee for Mahoney's placement. At no time during the course of the proceedings before

July 25, 1968, did the defendants know that two agencies were involved in the placement of Mahoney. Each defendant presented a bill for the placement of Mahoney in accordance with its published schedule. The plaintiff is ready, willing and able to pay the employment agency fee of $1440 to either of the defendants entitled thereto and sought an interlocutory judgment of interpleader requiring the defendants to interplead concerning their claims regarding the sum of $1440.

Having heard all the parties, the trial court rendered an "interlocutory judgment" ordering the defendants to interplead. Alpha appealed from that judgment to the Appellate Division of the Circuit Court. The plaintiff filed a motion to dismiss the appeal for lack of jurisdiction. It claimed that the decision by the Circuit Court was interlocutory and not a final judgment. The appeal was dismissed, and Alpha filed a petition for certification to this court. Certification was granted for the limited purpose of determining whether, in the present set of circumstances, the judgment of interpleader effectively concluded the rights of the parties on the stakeholder issue so as to render it an appealable final judgment.

"The test of a final judgment lies, not in the nature of the ruling, but in its effect in concluding the rights of the party appealing; if his rights are concluded so that further proceedings after the ruling cannot affect them, there is a final judgment." *Howarth* v. *Northcott,* 152 Conn. 460, 462, 208 A.2d 540; *State* v. *Roberson,* 165 Conn. 73, 82, 327 A.2d 556; *Prevedini* v. *Mobil Oil Corporation,* 164 Conn. 287, 293, 320 A.2d 797; 47 Am. Jur. 2d, Judgments, § 1054. In the case before us, the special defenses

filed by the defendants allege that the plaintiff is not a mere stakeholder, but has a potential liability to Alpha for $1320 and to S-H-S for $1440. They assert that the plaintiff may be liable to both defendants.

In rendering the judgment of interpleader, the trial court decided that the plaintiff is a stakeholder. Pursuant to that judgment, either Alpha or S-H-S may receive an employment agency fee for its efforts in the hiring of the employee by the plaintiff, but recovery by one defendant necessarily results in the denial of payment to the other. It thereby concludes the rights of the parties on the stakeholder issue. The judgment is final in that it establishes the right of the plaintiff to proceed as a disinterested stakeholder in spite of the defenses pleaded by the defendants. See *Paul* v. *Harold Davis, Inc.*, 155 Fla. 538, 20 So. 2d 795; *Miller* v. *Massachusetts Mutual Life Ins. Co.*, 183 Md. 19, 33, 36 A.2d 517; *National Lumber Co.* v. *Hodiamont Bank*, 49 S.W.2d 223 (Mo. App.).

In *Fisher* v. *Stevens Coal Co.*, 136 Pa. Super. 394, 396–97, 7 A.2d 573, it was held that where it appeared that the party seeking interpleader might have incurred dual liability with respect to claims to the funds which it desired to pay into court, an order granting interpleader—which would have precluded recovery by both parties on their claims—was determinative of substantive rights and could be appealed. See also *Genro, Inc.* v. *International Chemical & Nuclear Corporation*, 224 Pa. Super. 60, 302 A.2d 466. It has been held that a real estate owner cannot maintain a bill of interpleader against two brokers with whom he has separate contracts for the sale of property to determine which is

entitled to a commission for its sale. Since, in such a situation, each of the defendants relies upon a separate contract with the plaintiff, there is no privity between them, and their claims are independent. The owner is left to make his own defense at law, and is not permitted to compel the brokers to interplead. 45 Am. Jur. 2d 441, Interpleader, § 10 & n.7; see also note, 97 A.L.R. 996, 1005, and cases cited.

We find that similar reasoning is appropriate in the case before us. Though judgment upon the issue of interpleader does not finally dispose of all the issues in the case, it is clearly separable and distinct from any other judgment which may be rendered. As between the plaintiff and the defendants it finally and irrevocably fixes the status and determines certain rights of each with respect to the main suit. See *Prevedini* v. *Mobil Oil Corporation,* supra; *Gores* v. *Rosenthal,* 148 Conn. 218, 221, 169 A.2d 639; *Banca Commerciale Italiana Trust Co.* v. *Westchester Artistic Works, Inc.,* 108 Conn. 304, 307, 142 A. 838.

There is error and the case is remanded to the Appellate Division of the Court of Common Pleas[1] with direction to vacate the order dismissing the appeal and review the judgment of the trial court in accordance with this opinion.

In this opinion the other judges concurred.

---

[1] See General Statutes § 51-265.