STATE OF CONNECTICUT *v.* JAMES W. GROTTON

COTTER, C. J., LOISELLE, BOGDANSKI, SPEZIALE, PETERS and HEALEY, Js.

Decision released April 15, 1980

*Mark H. Swerdloff,* in support of the motion.

*C. Robert Satti,* state's attorney, in opposition.

PER CURIAM. This motion to reargue concerns the appealability of an order of the trial court relating to the taking of nontestimonial evidence under Practice Book, 1978, §§ 775, 776 and 778. In view of the frequency with which issues concerning appealability arise, we take this opportunity to clarify the prevailing law in this regard.

The facts pertinent to our inquiry are as follows. The defendant James W. Grotton was, on October 21, 1979, arrested and charged by information with the crime of possession of cocaine with intent to sell, in violation of General Statutes § 19-480a (a). No one can be convicted under this section if he or she was, "at the time of such action, a drug-dependent person." Id. On November 14, 1979, the state moved for an order directing the defendant to submit to a drug dependency examination that involved the taking of specimens of blood, saliva and urine. The trial court, *Goldberg, J.,* granted the state's motion and, pursuant to Practice Book, 1978, §§ 775, 776, 778 (6) and 778 (9),[1] directed the defendant to submit to a medical examination involving the requested procedures on January 9, 1980 at Norwich State Hospital. From the entry

[1] Practice Book, 1978, § 776, entitled Authority [to Obtain Non-testimonial Evidence from Defendant], provides: "Upon motion of the prosecuting authority, the judicial authority by order may direct a defendant to participate in a reasonably conducted procedure to obtain nontestimonial evidence under Sec. 775, if the judicial authority finds probable cause to believe that: (1) The evidence sought may be of material aid in determining whether the defendant committed the offense charged; and (2) The evidence sought cannot practicably be obtained from other sources."

Practice Book, 1978, § 778 provides in relevant part: "SCOPE. An order under Sec. 775 may direct the defendant to participate in one

of that order, the defendant appealed.[2] The state moved in this court to dismiss the appeal as interlocutory and, after oral argument last term, we ordered the defendant's appeal dismissed. Upon the entry of that order, the defendant filed a motion to reargue in this court.

An order of the trial court permitting the state to obtain nontestimonial evidence from a criminal defendant is a discovery order and as such invokes the familiar principles enunciated in our cases concerning the jurisdiction of this court to entertain appeals from orders issued upon motions for discovery. The general rule is that orders relating to discovery do not constitute a final judgment and are not appealable both because their initial determination does not so conclude the rights of the appealing party that further proceedings cannot affect those rights; *Chrysler Credit Corporation* v. *Fairfield Chrysler-Plymouth, Inc.,* 180 Conn. 223, 226, 429 A.2d 478 (1980); *State* v. *Kemp,* 124 Conn. 639, 646–47, 1 A.2d 761 (1938); see also *State* v. *Asherman,* 180 Conn. 141, 143, 429 A.2d 810 (1980); *E. J. Hansen Elevator, Inc.* v. *Stoll,* 167 Conn. 623, 627, 356 A.2d 893 (1975); *Guerin* v. *Norton,* 167 Conn. 282, 283, 355 A.2d 255 (1974); *Prevedini* v. *Mobil Oil Corporation,* 164 Conn. 287, 291–93, 320 A.2d 797 (1973); and because, as in the present case, their import is fully apprehended only after trial is concluded.

or more of the following procedures:  . . . (6) Submitting to the taking of specimens of saliva, breath, hair, and nails . . . (9) Submitting to the taking of specimens of blood and urine, if the taking does not involve an unreasonable intrusion of the body or an unreasonable affront to the dignity of the individual . . . ."

[2] The trial court also ordered the defendant to submit to a psychiatric examination under Practice Book, 1978, § 760. That order is not at issue on the present appeal.

In a criminal case, the imposition of sentence is the final judgment of the court. *State* v. *Moore,* 158 Conn. 461, 463, 262 A.2d 166 (1969); *State* v. *Smith,* 149 Conn. 487, 489, 181 A.2d 446 (1962). This rule of finality is subject to several narrowly defined exceptions where the otherwise interlocutory ruling challenged on appeal cannot, if erroneous, later be remedied by suppression of the evidence or reversal of the conviction after trial. Thus, we have established that jurisdiction may reside in this court to review an order denying an application to be adjudicated a youthful offender; *State* v. *Bell,* 179 Conn. 98, 425 A.2d 574 (1979); or an order denying a motion to dismiss on the ground that the state's prosecution places the defendant in double jeopardy. *State* v. *Moeller,* 178 Conn. 67, 420 A.2d 1153 (1979). However, the withdrawal of a sample of blood does not ordinarily fall within the narrow confines of these exceptions in which the trial itself is the source of irreparable harm. To the extent that our decision in *State* v. *Acquin,* 177 Conn. 352, 416 A.2d 1209 (1979), indicates that an order to obtain nontestimonial evidence may be reviewed on direct appeal, we hereby confine that decision to its facts.

A blood test, the most intrusive of the procedures here involved, does not merely constitute an order of discovery; it also constitutes a search and seizure under the federal and state constitutions.[3] As a

---

[3] Article first, § 7 of the constitution of Connecticut provides substantially the same protection as the fourth amendment to the United States constitution and provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

matter of substantive law, it is now well established that when a blood test is performed by medical personnel in a medical environment according to accepted medical procedures, such a test satisfies the reasonableness requirement of the fourth and fourteenth amendments of the United States constitution. *Schmerber* v. *California,* 384 U.S. 757, 766–72, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966) ; *State* v. *Acquin,* supra, 10; see *Breithaupt* v. *Abram,* 352 U.S. 432, 77 S. Ct. 408, 1 L. Ed. 2d 448 (1957) ; and compare *United States* v. *Crowder,* 543 F.2d 312, 316 (D.C. Cir. 1976). As a matter of procedure with respect to appealability, review of this order is no different from appellate review of other searches and seizures. In contradistinction to the defendant who seeks youthful offender status; *State* v. *Bell,* supra; or the defendant subject to being put twice in jeopardy for the same offense; *State* v. *Moeller,* supra; the criminal defendant who has a right to suppress incriminating evidence obtained in violation of the fourth amendment is not entitled to bar the prosecution altogether. *United States* v. *Blue,* 384 U.S. 251, 255, 86 S. Ct. 1416, 16 L. Ed. 2d 510 (1966).

The exclusionary rule of the fourth amendment requires a two-fold showing before error can be found, a showing that property has been wrongfully seized and that the defendant's conviction has been obtained by the use of evidence which is "the fruit of the poisonous tree." See *Ker* v. *California,* 374 U.S. 23, 30, 83 S. Ct. 1623, 10 L. Ed. 2d 726 (1963) ; *Mapp* v. *Ohio,* 367 U.S. 643, 647–49, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961) ; see also *State* v. *Watson,* 165 Conn. 577, 583–84, 345 A.2d 532 (1973). Questions arising under the fourth amendment must therefore await review until there has been a trial

and a conviction because there must be a functional link between the consequences of an illegal search and seizure and a later conviction in order to make any putative constitutional error harmful and hence to require reversal. See *Mapp* v. *Ohio,* supra; *United States ex rel. Orsini* v. *Reincke,* 286 F. Sup. 974, 977–78 (D. Conn. 1968), aff'd, 397 F.2d 977 (2d Cir. 1969), cert. denied, 393 U.S. 1050, 89 S. Ct. 689, 21 L. Ed. 2d 692 (1969). As the United States Supreme Court stated in *McNabb* v. *United States,* 318 U.S. 332, 63 S. Ct. 608, 87 L. Ed. 819 (1943), a forerunner of the landmark *Mapp* decision: "[A] *conviction* . . . , the *foundation* of which is evidence obtained in disregard of liberties deemed fundamental by the Constitution, cannot stand." (Emphasis added.) Id., 339–40, quoted in *Mapp* v. *Ohio,* supra, 649. That court, interpreting the federal statute governing finality as a condition of appellate review; 28 U.S.C. § 1291 (1976 Ed.); has expressly held that "[o]rders granting or denying suppression in the wake of such [suppression] proceedings are truly interlocutory, for the criminal trial is then fairly in train." *DiBella* v. *United States,* 369 U.S. 121, 131, 82 S. Ct. 654, 7 L. Ed. 2d 614 (1962); see *United States* v. *MacDonald,* 435 U.S. 850, 853–63, 98 S. Ct. 1547, 56 L. Ed. 2d 18 (1978); compare *Abney* v. *United States,* 431 U.S. 651, 656–62, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1977); *Stack* v. *Boyle,* 342 U.S. 1, 6, 72 S. Ct. 1, 96 L. Ed. 3 (1951); see also 3 LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 11.7 (a) (1978).

Guided by these principles, we hold that in this case the propriety of the order requiring nontestimonial evidence cannot be assessed until there has been a conviction and a final judgment involving the

use at trial of the evidence sought to be obtained from the defendant. The present order is interlocutory and not now appealable.

The motion to reargue is denied.